UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 25-07872-MWF (SSCx)        **Date:** October 8, 2025

Title: Reconstruction Experts, Inc. v. Associated Industries Insurance Co., Inc. et al.

---

**Present:** The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

Deputy Clerk:         Court Reporter:
Rita Sanchez         Not Reported

Attorneys Present for Plaintiffs:        Attorneys Present for Defendants:
None Present        None Present

**Proceedings (In Chambers):**    ORDER GRANTING DEFENDANT TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA'S MOTION TO DISMISS [15]; REQUEST FOR JUDICIAL NOTICE [15-1]; SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE [17-1]

       Before the Court is a Motion to Dismiss (the "Motion"), filed by Defendant Travelers Casualty and Surety Company of America ("Travelers") on August 28, 2025. (Docket No. 15). Plaintiff Reconstruction Experts, Inc. ("REI") filed an Opposition on September 8, 2025. (Docket No. 17). Travelers filed a Reply on September 15, 2025. (Docket No. 22).

       The Court has read and considered the papers filed in connection with the Motion and held a hearing on **September 29, 2025**.

       The Request for Judicial Notice and Supplemental Request for Judicial Notice are **GRANTED**.

       The Motion is **GRANTED** *with leave to amend*. Because the Underlying Action arises out of Wrongful Acts occurring at least in part in 2021, or at a minimum arises out of conduct related to the 2021 Wrongful Acts, the Policy's broad Prior Acts Exclusion unambiguously eliminates any potential for coverage.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 25-07872-MWF (SSCx)**             **Date:  October 8, 2025**
Title: Reconstruction Experts, Inc. v. Associated Industries Insurance Co., Inc. et al.

**I.**       **BACKGROUND**

REI initiated this action on July 7, 2025, in Los Angeles County Superior Court. (*See* Complaint (Docket No. 1-1)).  Defendant Berkeley Assurance Company removed this action on August 21, 2025.  (*See* Notice of Removal (Docket No. 1)).  The Court summarizes the allegations in the Complaint in the light most favorable to REI as follows:

     **A.**      **The Policy**

Travelers issued a Directors and Officers Liability Coverage Policy (the "Policy") to Johns Lyng USA, LLC, insuring REI for up to $3,000,000 per claim. (Complaint, ¶ 30; *see also id.*, Ex. 3).  A copy of the Policy is attached to the Complaint as Exhibit 3 and attached to REI's Supplemental Request for Judicial Notice as Exhibit 1.  (Docket No. 17-3).

The Policy includes a "Prior Acts Exclusion Endorsement" that states, "The Company will have no liability for Loss for any Claim based upon or arising out of any Wrongful Act committed or alleged to have been committed, in whole or in part, prior to the applicable Retroactive Date[.]" (Complaint, Ex. 3).  The "Retroactive Date" in question is December 31, 2021.  (*Id.*).  The Policy defines "Wrongful Act" to mean "any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty or neglect by, or any matter asserted against" REI.  (*Id.*).  The Policy further provides that "all Related Wrongful Acts will be deemed to have occurred at the time the first of such Related Wrongful Acts occurred whether prior to or during the Policy Period."  (*Id.*).

     **B.**      **The Underlying Action**

REI performed contracting work for a construction project at the Excelsior at the Americana at Brand, a luxury condominium community in Glendale, California. (Complaint ¶¶ 14, 17).  REI and the Excelsior entered into a "Pre-Construction Contract" on July 12, 2021.  (*Id.* ¶ 17).  REI and the Excelsior later entered into a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 25-07872-MWF (SSCx)**               **Date:  October 8, 2025**
Title: Reconstruction Experts, Inc. v. Associated Industries Insurance Co., Inc. et al.

"Reconstruction Contract" for certain repair work at the property on May 13, 2022. (*Id.* ¶ 18).

Following payment disputes with the Excelsior, REI sued the Excelsior in Los Angeles County Superior Court on March 23, 2023, in an action titled *Reconstruction Experts, Inc. v. The Excelsior at the Americana at Brand Homeowners' Association, et al.*, Case No. 23GDCV00580 (the "Underlying Action").  (*Id.* ¶ 20).  On January 12, 2024, the Excelsior filed a cross-complaint (the "CC") against REI.  (*Id.* ¶ 23).  On January 30, 2025, filed a Second Amended Cross-Complaint (the "SACC").  (*See id.*; Docket No. 15-1).  The CC is attached as Exhibit 2 to REI's Supplemental Request for Judicial Notice (*see* Docket Nos. 17-4, 17-5), and the SACC is attached as Exhibit A to Travelers' Request for Judicial Notice and Exhibit 4 to REI's Supplemental Request for Judicial Notice.  (*See* Docket Nos. 15-1, 17-8).

Both parties agree that the SACC contains substantially the same allegations as the original CC.  (Complaint ¶ 23, Motion at 9).  The Court summarizes the Underlying Action with reference to the SACC, the operative cross-complaint, as follows:

The Excelsior asserted 14 causes of action against REI, including breach of the Pre-Construction and Reconstruction Contracts, negligence, and fraud.  (*See generally* SACC).  Fundamentally, the Excelsior alleges that REI engaged in a deliberate scheme "intended from the start to result in, and in fact did result in, overcharges to the Excelsior for REI's work on the Project."  (*Id.* ¶ 420).

The SACC alleges that REI's alleged fraudulent scheme began in 2021 during the pre-construction phase.  The Excelsior pleads that between April and July 2021, REI's Pre-Construction Team made various representations to the Excelsior regarding its expertise and business relationships.  (*Id.* ¶¶ 32, 35, 41, 420–38; 527–39).  For example, among many other representations, the SACC alleges that REI represented that its team were "experts in identifying the problems that needed to actually be fixed following construction defect lawsuits," that they were "experts in creating a scope of repair and a budget for that scope of repair," and that REI was also "an expert in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 25-07872-MWF (SSCx)**　　　　　　　**Date:  October 8, 2025**
Title: Reconstruction Experts, Inc. v. Associated Industries Insurance Co., Inc. et al.

field of actually performing the reconstruction projects that it plans and budgets." (*Id.* ¶¶ 420, 422). The SACC alleges that these representations were "made by all members of the Pre-Construction Team either directly or by the failure of others present to dispute or change the representations." (*Id.* ¶ 32).

The SACC alleges that these representations were false and misleading and were "intended to induce the Excelsior to hire Reconstruction Experts to handle both pre-construction planning as well as reconstruction." (*Id.* ¶ 42). Specifically, the SACC alleges that "while the Excelsior did not know [these representations were] not true, the Pre-Construction Team knew . . . and yet let the false and misleading statements remain." (*Id.* ¶ 137).

The SACC further pleads that the Excelsior relied on such representations in choosing to enter into the Pre-Construction Contract with REI on July 12, 2021. (*Id.* ¶¶ 30, 438). The SACC alleges that the terms of the Pre-Construction Contract and surrounding conduct were part of "a company-wide plan to preclude other general contractors from bidding so that [REI] would be given this lucrative reconstruction contract." (*Id.* ¶ 128). The SACC alleges that "[t]he truth about the motivations of or the financial incentives for the Pre-Construction Team were unknown to the Excelsior at the time that the Pre-Construction Contract was entered into." (*Id.* ¶ 483).

The SACC also pleads that REI helped engineer the termination of the Excelsior's construction manager, Mike Kiss, in 2021 as part of this alleged scheme. (*Id.* ¶¶ 439–47). The SACC alleges that "because Mike Kiss likely knew of the scheme and game that [REI] played with bidding, contracts, and change orders, it was therefore important for the Pre-Construction Team to get rid of Mike Kiss." (*Id.* ¶ 443). These steps were allegedly part of the team's strategy to eliminate internal oversight that could interfere with its plan "to win the bidding and then force the Excelsior to enter into excessive Change Orders disguised as Construction Change Directives." (*Id.* ¶¶ 118–19).

In addition to the 2021 allegations, the SACC sets out a series of alleged misrepresentations and fraudulent acts in 2022–2023 during construction and billing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 25-07872-MWF (SSCx)          **Date:** October 8, 2025

Title: Reconstruction Experts, Inc. v. Associated Industries Insurance Co., Inc. et al.

The Excelsior alleged that REI submitted "fraudulent Payment Applications" for "work that was never performed." (*Id.* ¶¶ 490–93). The SACC further alleges that REI "caused numerous Requests for Information and Change Directives (or Change Orders) to be created for work that was included in the original Reconstruction Contract Scope." (*Id.* ¶ 500). The purposes of these Change Orders were allegedly "to create confusion, uncertainty, and delay for a project that [REI] was not equipped to complete under the terms of the Reconstruction Contract." (*Id.* ¶ 501). The Excelsior alleges that REI "intended from before it entered into a contract with the Excelsior to pad their work with fraudulent Change Directives (or Change Orders)." (*Id.* ¶ 502).

Based on this Underlying Action, REI put Travelers on notice of its duty to defend on February 9, 2024. (Complaint ¶ 84). On March 12, 2024, Travelers admitted a duty to defend REI, although the Complaint references that Travelers maintained a "reservation of rights." (*See id.* ¶ 87). Nevertheless, REI alleges that Travelers failed to defend REI in the Underlying Action and reimburse REI for its defense costs incurred. (*Id.* ¶ 90).

Based on these allegations, Plaintiff brings the following four claims for relief against Travelers and other Defendants who did not join in this Motion: (1) Breach of Written Contract; (2) Declaratory Relief; (3) Breach of Implied Covenant of Good Faith and Fair Dealing; and (4) Unlawful Business Practices under California Business and Professions Code § 17200. (*Id.* ¶¶ 129–157).

II. **REQUESTS FOR JUDICIAL NOTICE AND INCORPORATION BY REFERENCE**

Travelers filed a Request for Judicial Notice ("RJN") with its Motion on August 28, 2025. (Docket No. 15-1). REI filed a Supplemental Request for Judicial Notice ("Supplemental RJN") with its Opposition on September 8, 2025. (Docket No. 17-1).

In its RJN, Travelers asks that the Court consider the following document:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 25-07872-MWF (SSCx)  **Date:** October 8, 2025
Title: Reconstruction Experts, Inc. v. Associated Industries Insurance Co., Inc. et al.

1. The Excelsior's Verified Second Amended Cross-Complaint in *Reconstruction Experts, Inc. v. The Excelsior at the Americana at Brand Homeowners' Association*, No. 23GDCV00580 (Super. Ct., Los Angeles, Cal.), Exhibit A.

In its Supplemental RJN, REI asks that the Court consider the following documents:

1. Travelers Policy No. 019-LB-107756394, effective November 1, 2023, through November 1, 2024, Exhibit 1;

2. The Excelsior's Verified Cross-Complaint in *Reconstruction Experts, Inc. v. The Excelsior at the Americana at Brand Homeowners' Association*, No. 23GDCV00580 (Super. Ct., Los Angeles, Cal.), Exhibit 2;

3. The Excelsior's Verified First Amended Cross-Complaint in *Reconstruction Experts, Inc. v. The Excelsior at the Americana at Brand Homeowners' Association*, No. 23GDCV00580 (Super. Ct., Los Angeles, Cal.), Exhibit 3;

4. The Excelsior's Verified First Amended Cross-Complaint in *Reconstruction Experts, Inc. v. The Excelsior at the Americana at Brand Homeowners' Association*, No. 23GDCV00580 (Super. Ct., Los Angeles, Cal.), Exhibit 4.

Neither party opposes the other party's request. (*See* Opp. at 3 n.1). The Court agrees it may properly consider these documents. Exhibit 1 is incorporated by reference given it is also attached to the Complaint and its authenticity is not disputed. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). The Court further takes judicial notice of the cross-complaints in Exhibits A, 2, 3, and 4. *See Cherewick v. State Farm Fire & Cas.*, 578 F. Supp. 3d 1136, 1158 (S.D. Cal. 2022) ("It is well-established that courts may take judicial notice of the pleadings, filings, and court records of any court.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 25-07872-MWF (SSCx)                    Date:  October 8, 2025
Title: Reconstruction Experts, Inc. v. Associated Industries Insurance Co., Inc. et al.

Accordingly, the RJN and Supplemental RJN are **GRANTED**.

### III.  LEGAL STANDARD

#### A.  Rule 12(b)(6)

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In ruling on the Motion under Rule 12(b)(6), the Court follows *Twombly*, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and their Ninth Circuit progeny.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  The Court must disregard allegations that are legal conclusions, even when disguised as facts.  *See id*. at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *Eclectic Props. E., LLC v. Marcus & Millichap Co*., 751 F.3d 990, 996 (9th Cir. 2014).  "Although 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable,' plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'" *Eclectic Props.*, 751 F.3d at 995 (quoting *Twombly*, 550 U.S. at 556–57).

The Court must then determine whether, based on the allegations that remain and all reasonable inferences that may be drawn therefrom, the complaint alleges a plausible claim for relief.  *See Iqbal*, 556 U.S. at 679; *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011).  "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 25-07872-MWF (SSCx)              Date:  October 8, 2025
Title: Reconstruction Experts, Inc. v. Associated Industries Insurance Co., Inc. et al.

reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

### B. Duty to Defend

An "insurer has a duty to defend an insured if it becomes aware of, or if [a] third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 19, 44 Cal. Rptr. 2d 370 (1995).  Under well-established California law, "the duty to defend is broader than the duty to indemnify." *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 299–300, 24 Cal. Rptr. 2d 467 (1993); *see also Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*, 59 Cal. 4th 277, 287, 172 Cal. Rptr. 3d 653 (2014) (duty to defend interpreted broadly).

However, if the third-party complaint could not raise a single issue that would bring it within the policy's coverage under any conceivable theory, the insurer need not defend.  *Gray v. Zurich Ins. Co.* 65 Cal. 2d 263, 276 n.15, 54 Cal. Rptr. 104 (1966); *see also Hyundai Motor Am. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 600 F.3d 1092, 1097 (9th Cir. 2010) (obligation to defend excused only when the complaint does not raise, by any conceivable theory, a single issue which could bring it within the policy coverage).  If an insurer demonstrates that an exclusion in its policy bars coverage, a court may properly dismiss a claim based on an alleged duty to defend.  *See Mudpie, Inc. v. Travelers Casualty Ins. Co.*, 15 F.4th 885, 893–94 (9th Cir. 2021).

## IV. DISCUSSION

Travelers seeks dismissal of all claims for relief against it on the grounds that the Prior Acts Exclusion bars coverage for the Underlying Action against REI, and all claims for relief are predicated on a duty to defend the Underlying Action.  REI does not appear to dispute that all its claims rely on this duty to defend, nor could it reasonably do so.  *See, e.g.*, *Camco Pac. Constr. Co., Inc. v. Lexington Ins. Co.*, Case No. SACV 13-01807-DOC (JPRx), 2014 WL 12577176, at *6 (C.D. Cal. Mar. 13,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 25-07872-MWF (SSCx)**                **Date:  October 8, 2025**
Title: Reconstruction Experts, Inc. v. Associated Industries Insurance Co., Inc. et al.

2014) (explaining that where a duty to defend claim fails for lack of any potential for coverage, a claim for breach of the implied covenant of good faith and fair dealing necessarily fails too).

### 1. Alleged Wrongful Acts in 2021

The threshold question before the Court is whether the Excelsior alleged any "Wrongful Acts" before the Retroactive Date of December 31, 2021, in the Excelsior's SACC.  The Court concludes that it did, and the allegations are both specific and numerous.

The SACC first alleges that, in 2021, REI made multiple misrepresentations regarding REI's expertise and capabilities in order to induce the Excelsior to sign the Pre-Construction Contract in 2021 and eventually sign the Reconstruction Contract in 2022.  (SACC ¶¶ 32, 35, 41, 42, 420–438).  To these particular allegations, REI responds that the SACC only alleges that these statements were "representations," not "misrepresentations," and that any alleged scheme only began in 2022.  (Opp. at 5). The Court is not convinced.

The SACC unambiguously alleges these statements were false or misleading.  It alleges that "[t]he Pre-Construction Team did not let the Excelsior know the truth." (SACC ¶ 131).  And, after setting out the representations, the SACC explains that "[n]one of this was true — and in fact was all untrue — and while the Excelsior did not know it was not true, the Pre-Construction Team knew it was not true and yet let the false and misleading statements remain."  (*Id.* ¶ 137; *see also id.* ¶ 146 (noting that "[t]he Pre-Construction Team intentionally hid this truth from the Excelsior").  The SACC also alleges the Pre-Construction representations were misleading in that "[t]he truth about the motivations of or the financial incentives for the Pre-Construction Team were unknown to the Excelsior at the time that the Pre-Construction Contract was entered into."  (*Id.* ¶ 117).

For the same proposition, Travelers further points the Court to ¶ 486 of the SACC, which states in a conclusory fashion that "the aforementioned representations

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 25-07872-MWF (SSCx)           **Date:** October 8, 2025
**Title:** Reconstruction Experts, Inc. v. Associated Industries Insurance Co., Inc. et al.

---

by Reconstruction Experts, Lundell, John Dannan, Kay, and Kronebusch were all false, misleading and/or untrue." At the hearing, REI took issue with Travelers' citation to this paragraph, noting that it follows a series of allegations specifically discussing conduct occurring in 2022 and does not clearly refer to the 2021 representations. But even so, the Court cannot ignore the litany of other allegations, discussed above, that unambiguously refer to the 2021 representations as false or misleading. (*See id.* ¶¶ 117, 131, 137, 146).

REI similarly took issue with any reliance on ¶ 137 of the SACC, contending that the allegation is technically under the heading "The Bid Package and Bidding" — a heading referring to 2022 events — therefore making the allegation's temporal scope ambiguous. It is perhaps true that the Excelsior could have more artfully organized its allegations or added additional headings. It does not follow, however, that ¶ 137 is ambiguous. To the contrary, the allegations preceding ¶ 137 unambiguously refer to the representations made in 2021 (*see id.* ¶¶ 134–136), and ¶ 137 unambiguously alleges that those representations were "false and misleading."

In sum, the Court cannot accept REI's characterization that the 2021 representations were not Wrongful Acts when the SACC itself describes the 2021 representations as false and misleading.

Nor can the Court ignore the array of other unambiguous allegations describing Wrongful Acts in 2021 or an overarching scheme beginning, in part, in 2021. For example, the SACC also alleges that REI caused construction manager Mike Kiss's termination in 2021 as part of its alleged fraudulent scheme because Kiss "likely knew the scheme and game that [REI] played with bidding, contracts, and change orders." (*See id.* ¶¶ 63–72).

At the hearing, REI contended that the Kiss termination was not a Wrongful Act because the termination was on facially valid pretenses — "that Mike Kiss was not doing his job[.]" (*Id.* ¶ 69). REI contended that, with respect to the Kiss termination, the SACC at most alleged that REI possessed a wrongful thought or wrongful motive, but not that REI had engaged in a Wrongful Act.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 25-07872-MWF (SSCx)          **Date:** October 8, 2025
**Title:** Reconstruction Experts, Inc. v. Associated Industries Insurance Co., Inc. et al.

---

The Court is not persuaded by this reading of the allegations or of the Policy's definition of a Wrongful Act. While the definition of Wrongful Act is not so broad as to cover mere thoughts, it is broad enough to include "any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty or neglect by, or any matter asserted against, the Insured organization." (Complaint, Ex. 3). With respect to the Kiss termination, the SACC alleges that "[t]he Excelsior was unaware at the time that the Pre-Construction Team wanted to get rid of Mike Kiss for the benefit of the Pre-Construction Team and to the intentional detriment of the Excelsior." (SACC ¶ 68). "To further [that] goal . . . the Pre-Construction Team began to tell the Excelsior that Mike Kiss was not doing his job and was holding up progress on the plans and the ultimate construction project." (*Id.* ¶ 69). The SACC therefore alleges that the representations regarding Kiss were at the very least misleading, which falls within the definition of a Wrongful Act.

The Court is also unpersuaded by REI's argument that, even if a "plan" or "scheme" existed in 2021, it did not become wrongful until 2022, when the overbilling allegedly materialized. (Opp. at 6–7). This argument ignores that the SACC explicitly frames the 2021 conduct as part of a single, overarching scheme of alleged fraud that continued into 2022. The SACC alleges that REI's "intention *from the start* was to win the bidding and then force the Excelsior to enter into excessive Change Orders." (SACC ¶ 484 (emphasis added)). It further alleges that the "Pre-Construction Contract was part of the overall scheme," that the Pre-Construction Team's representations were "all part of [REI's] plan to cause the Reconstruction Contract to be awarded," and that the 2021 representations were made to make the Excelsior "confident that the contract price would not be increased due to Change Orders and that it could actually afford the reconstruction project." (*Id.* ¶¶ 127, 130, 136). And the 2021 Kiss termination is pled not as a tangential fact but as a method by which REI could eliminate oversight by someone who could expose the later scheme. (*Id.* ¶ 67). Therefore, even the alleged fraudulent conduct occurring after the Retroactive Date appears part of one alleged cohesive scheme concocted and set in motion before December 31, 2021.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 25-07872-MWF (SSCx)             Date:  October 8, 2025
Title: Reconstruction Experts, Inc. v. Associated Industries Insurance Co., Inc. et al.

In sum, the SACC plainly alleges qualifying Wrongful Acts before the Retroactive Date.  The SACC also clearly alleges an overarching scheme connecting the Wrongful Acts occurring both before and after the Retroactive Date.  This conclusion provides the foundation for applying the Prior Acts Exclusion to the Underlying Action.

### 2. Application of the Prior Acts Exclusion

As a threshold matter, the Court acknowledges the demanding standard for dismissing an insured's complaint based on a policy exclusion.  An insurer may rely on an exclusion to obtain dismissal only if "the exclusion applies in all possible worlds."  *See Atl. Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1039, 123 Cal. Rptr. 2d 256 (2002).  In other words, unless the allegations in the underlying complaint and judicially noticeable materials establish that coverage is impossible, the insured is entitled to proceed.

Whether a particular policy provides a potential for coverage is a question of law.  *Waller*, 11 Cal. 4th at 18.  Ordinary contract interpretation principles govern the interpretation of insurance contracts.  *Id.*  The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," controls judicial interpretation.  *Id.*; *see also Chatton v. Nat'l. Union Fire Ins. Co.*, 10 Cal. App. 4th 846, 853, 13 Cal. Rptr. 2d 318 (1992).  Therefore, if the contractual language in the policy is unambiguous, it governs.  *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 822 (1990).  "A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable."  *Waller*, 11 Cal. 4th at 18.  However, courts shall not strain to create an ambiguity where none exists.  *Id.* at 18–19.

Applying these well-established principles, the Court concludes that Travelers has met its burden here with respect to the Prior Acts Exclusion.  As explained above, the SACC clearly alleges "Wrongful Act[s] committed or alleged to have been committed, in whole or in part, prior to" December 31, 2021.  (Complaint, Ex. 3).  The plain language of the Exclusion therefore removes any possibility of coverage.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 25-07872-MWF (SSCx)          **Date:** October 8, 2025
**Title:** Reconstruction Experts, Inc. v. Associated Industries Insurance Co., Inc. et al.

---

One basis for this conclusion is that under the Policy's "Related Wrongful Acts" provision, "all Related Wrongful Acts will be deemed to have occurred at the time the first of such Related Wrongful Acts occurred." (*Id.*). Related Wrongful Acts are those with a "common nexus" or causal connection. (*Id.*). Because the SACC alleges, as identified above, a single, overarching scheme beginning in 2021, all later Wrongful Acts must be deemed, for purposes of the Prior Acts Exclusion, to have occurred in 2021.

REI resists this reading, contending that the Prior Acts Exclusion itself speaks only of "Wrongful Acts," not "Related Wrongful Acts" and that Travelers impermissibly stitches together definitions from different parts of the Policy. (Opp. at 11). The Court disagrees. The fact that definitions appear in different sections does not create ambiguity where, as here, the provisions read together yield a single, coherent reading. *See Jayhawk Priv. Equity Fund II LP v. Liberty Ins. Underwriters, Inc.*, Case No. CV 17-5523-GW (RAOx), 2018 WL 11605692, at *7 (C.D. Cal. June 7, 2018) (rejecting similar argument from plaintiffs because "the effect of [the] provisions is clear" in total even without internal cross-referencing between the provisions); *see also Centigram Argentina, S.A. v. Centigram Inc.*, 60 F. Supp. 2d 1003, 1011 (N.D. Cal. 1999) ("Provisions in a contract . . . are not to be considered in a vacuum, but instead the entirety of the contract must be interpreted together."); Cal. Civ. Code §1641 ("The whole of a contract is to be taken together, so as to give effect to every part . . . each clause helping to interpret the other."). The only reasonable construction of these provisions is that Related Wrongful Acts are deemed to have occurred when the first related act occurred, and thus for purposes of the Prior Acts Exclusion, all acts related to the 2021 misrepresentations, for example, are treated as having occurred in 2021.

But even setting aside the Related Wrongful Acts provision, the Exclusion itself bars coverage for any claim "based upon or arising out of" a Wrongful Act committed "in whole or in part" before the Retroactive Date. California courts construe "arising out of" broadly to require only a "minimal causal connection or incidental relationship." *Medill v. Westport Ins. Corp.*, 143 Cal. App. 4th 819, 830, 49 Cal. Rptr.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 25-07872-MWF (SSCx)           **Date:** October 8, 2025
Title: Reconstruction Experts, Inc. v. Associated Industries Insurance Co., Inc. et al.

---

3d 570 (2006) (internal quotation marks and citation omitted). Here, for the reasons discussed above, the SACC alleges one overarching fraudulent scheme, committed "in part" in 2021. The Exclusion, with its broad text, therefore applies to the Underlying Action on that basis alone.

The Court finds *Jayhawk*, 2018 WL 11605692, particularly instructive on this point. There, the insured argued that even if certain alleged misrepresentations occurred before the retroactive date, other post-date conduct should preserve coverage. *Id.* at *8. The court rejected that position, explaining that the relevant prior acts exclusion barred claims "based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving" acts committed before the retroactive date. *Id.* On that basis, the court concluded that the exclusion barred coverage "even with respect to any post-[retroactive date] Wrongful Acts." *Id.* The formulation in *Jayhawk* substantively matches the Policy's language here, warranting a similar result.

At the hearing, REI argued that *Jayhawk* is not persuasive because it involved an exclusion provision that is broader than the one at issue here. Considering the breadth with which courts consider the "arising out of" language present in both provisions, however, the Court does not agree that *Jayhawk*'s additional language adds substantive breadth. Nor does REI explain how this supposed distinction logically necessitates a different result in REI's favor.

Against *Jayhawk*'s persuasive authority, REI relies heavily on *Emerson Equity, LLC v. Forge Underwriting Ltd.*, 707 F. Supp. 3d 900 (N.D. Cal. 2023), but that decision construed an exclusion materially different from the one here. There, the exclusion barred coverage for "any Claim, including any Interrelated Wrongful Act(s), occurring prior to" the retroactive date. *Id.* at 907. The court found the clause ambiguous because it could reasonably be read as applying only to ***claims filed*** before the retroactive date, rather than to ***acts occurring*** before that date. *Id.* at 908. The court expressly noted the absence of familiar connectors such as "*arising from*" to cure this ambiguity. *Id.* (emphasis in the original). The Policy here, by contrast, excludes claims "based upon or arising out of" Wrongful Acts occurring "in whole or in part"

---

**CIVIL MINUTES—GENERAL**           14

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 25-07872-MWF (SSCx)                    Date:  October 8, 2025
Title: Reconstruction Experts, Inc. v. Associated Industries Insurance Co., Inc. et al.

before the Retroactive Date — language that removes the very ambiguity identified in *Emerson*.  Moreover, despite what REI suggests, the *Emerson* court did not otherwise find ambiguity inherent in the "Interrelated Wrongful Act(s)" language.

Accordingly, because there is no basis on which the Underlying Action could potentially be covered by the terms of the Policy, and the Court will grant the Motion. *See Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 655 (2005); *see also Strategix, Ltd. v. St. Paul Fire & Marine Ins. Co.*, Case No. CV 11-04638-GAF (VBKx), 2011 WL 13134617, at *5 (C.D. Cal. Aug. 17, 2011), *aff'd,* 522 F. App'x 403 (9th Cir. 2013) (dismissing claims where no possibility of coverage due to exclusion provision).

### 3.  Prior Acceptance of the Duty to Defend

Finally, REI contends that, even if the Prior Acts Exclusion ultimately applies, it has still stated a claim because Travelers accepted REI's tender and admitted a duty to defend from February 2024 through the filing of the SACC in January 2025.  (Opp. at 14–15).  According to REI, Travelers' failure to reimburse defense costs incurred during that period constitutes a breach independent of later coverage disputes.

The Court is not persuaded, and REI notably cites no authority in its favor.  As the California Supreme Court has made clear, "where the third party suit never presented any potential for policy coverage, the duty to defend does not arise in the first instance."  *Scottsdale Ins. Co.*, 36 Cal. 4th at 657.  It follows that "an insurer, having reserved its right to do so, may obtain reimbursement of defense costs which, in hindsight, it never owed."  *Id.*

Here, REI does not allege that Travelers' acceptance was without reservation and, although not totally clear, the Complaint references Travelers' "reservation of rights."  (*See* Complaint ¶ 87).  Therefore, absent other allegations — such as the acceptance being without reservation — Travelers' acceptance of a tender did not create a duty to defend or to reimburse past defense costs if the Policy excluded coverage *ab initio*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 25-07872-MWF (SSCx) | Date:  October 8, 2025 |
| Title: Reconstruction Experts, Inc. v. Associated Industries Insurance Co., Inc. et al. | |

To warrant a different result, REI seems to imply that the original cross-complaint was different or ambiguous enough that a duty to defend was triggered at that point, even if the duty extinguished upon the filing of the SACC.  This undeveloped argument is unpersuasive and seems to defy REI's own Complaint and the record, which reflect that each iteration of the cross-complaint contained "substantially similar" allegations.  (Complaint ¶ 23).  The original cross-complaint alleged Wrongful Acts in 2021, including the same representations regarding REI's expertise as well as the conduct surrounding the termination of Mike Kiss.  (*See* CC ¶¶ 19–30, 43, 47–50, 56, 70–81, 89–94, 107–108).  And the original cross-complaint familiarly refers to these incidents as part of REI's "overall plan and scheme."  (*Id.* ¶¶ 70, 89).  REI makes no convincing effort to materially distinguish the original cross-complaint from the SACC for purposes of evaluating the Prior Acts Exclusion.

Accordingly, Travelers' prior acceptance of REI's tender does not alter the Court's analysis.

## V.     LEAVE TO AMEND

Rule 15 requires that leave to amend "be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2).  "This policy is to be applied with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).  The Supreme Court identified five factors a court should consider when deciding whether to grant leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether the plaintiff has previously amended its complaint.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).  Of these, "the consideration of prejudice to the opposing party carries the greatest weight." *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Eminence Cap., LLC*, 316 F.3d at 1052); *see also Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015) (indicating a court should explain reasons for denying leave to amend).

The factors here weigh in favor of granting leave to amend on REI's claims.  There is no reason to believe the Complaint was brought in bad faith or that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 25-07872-MWF (SSCx)          **Date:** October 8, 2025

Title: Reconstruction Experts, Inc. v. Associated Industries Insurance Co., Inc. et al.

amendment would cause undue delay. Nor can the Court say that amendment would be futile. REI could add allegations that clarify that Travelers' previous responses were not subject to a reservation of rights, which might plausibly create liability for certain post-tender costs.

## VI. CONCLUSION

The Motion is **GRANTED *with leave to amend*.** REI may file a First Amended Complaint ("FAC") by no later than **November 3, 2025**. Travelers shall respond to the FAC, if filed, by no later than **November 24, 2025**.

Failure to file an FAC by November 3, 2025, will be construed as an intention to stand on the existing allegations and will result in dismissal of this action against Travelers.

IT IS SO ORDERED.